# *Paul J. Corrado*
## *Attorney & Counselor At Law, Co.*
*24700 Chagrin Boulevard, Suite 309*
*Beachwood, Ohio 44122*

Telephone: (216) 765-4000 x 11     Email: pcorrado@ohioemploymentlawyer.com
Fax: (216) 765-4100                                www.ohioemploymentlawyer.com

December 27, 2018

**Sent Via Email and US Mail**
John Gerak, Esq.
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Key Tower
127 Public Square, Suite 4100
Cleveland, OH 44114

Re:  Michelle Rose/ University Hospitals and University Hospitals Physician Services, Inc.

Dear John:

I have taken the liberty of sending this letter regarding my client, Michelle Rose[1], to you since you and your law firm have represented University Hospitals in previous employment matters. If you are not representing University Hospitals or would prefer I send this letter directly to someone at University Hospitals, let me know.

Ms. Rose was a former Practice Manager and subsequently a Practice Lead employed by University Hospitals and University Hospitals Physician Services, Inc. ("UH"). She began working for UH on April 4, 2005 and worked for Dr. Kent Knauer from March 2011 until December 20, 2017, when UH terminated her employment for alleged "continued aggressive and threatening behavior and violation of UH Password." (UH Corrective Action Form 12/20/2017) Based on the facts and documents available, we strongly disagree with UH's characterization of Ms. Rose's conduct and the purported reason for discharge.

The purpose of this letter is to raise and discuss several issues concerning Ms. Rose's termination and UH's subsequent conduct with the hope that we can resolve these matters. These issues include:

1. The actual, and unlawful, reasons for Ms. Rose's termination, which we believe were related to her disability, fibromyalgia, and her need for FMLA benefits and an additional leaves of absence during the fall of 2017 due to her medical

---

[1] I understand that UH has employed two individuals named Michelle Rose. UH has mixed up the two with regard to their 401(k) accounts and beneficiaries and their medical insurance. In order to avoid any further confusion, see the dates of employment and positions held by my client as described in the first paragraph of this letter. If you have any questions, let me know.

1

condition, her need for surgery and time off for her father's hospitalization and untimely death;

2. UH's violations of its policies related to FMLA leave and other medical leaves of absence and termination of employees;

3. UH's failure to provide the promised continuation of medical insurance throughout the month of January 2018 and its unwillingness to respond to Ms. Rose's repeated requests that they do that. As a result, Ms. Rose went without medications critical to the treatment of her fibromyalgia as well as her recovery from knee surgery. Additionally, she was unable to continue her physical therapy for her surgically reconstructed knee. Her emails and text messages to UH's Human Resources Manager, Valarie Jaggie, documented the pain she had to endure without the medications as well as her inability to continue physical therapy; and

4. UH's mishandling of Ms. Rose's 401(k) account, confusing it with that of another employee with the same name. UH also mixed up their insurance policies during Ms. Rose's employment, which created more confusion and issues until the policies and coverage were straightening out. However, the problems with Ms. Rose's 401(k) have continued. Ms. Rose recently learned that UH incorrectly listed the other employee's beneficiaries as those of Ms. Rose. This mistake needs to be rectified immediately and procedures implemented to prevent further confusion of the two accounts. UH should provide documentation to me of the corrective action taken and the safeguards put in place to assure that these two 401(k) accounts will not be mishandled going forward.

The facts and circumstances discussed below are based on information and documents available to us. To the extent that UH has other relevant documentation or information regarding the events, we ask that you provide it along with UH's response. Any additional information UH may have will allow for a more informed discussion. You are to direct all further communication regarding this matter to me.

By way of background and context, Ms. Rose worked for Dr. Kent Knauer for more than six and a half years. She received positive performance appraisals and raises throughout her employment. She asked UH to provide her with copies of her evaluations and they claimed to have only the appraisals from 2015 and 2016. Her manager, Cynthia Clark rated Ms. Rose as an "Effective Contributor" on both of the available appraisals. Ms. Clark's remarked on the 2016 review, which Ms. Rose received in May 2017, "Michelle is a very loyal, industrious employee who works diligently to make sure her Provider is successful and patients are the top priority." There was no mention of any of the purported issues that resulted in her termination less than a year later. Ms. Rose was not disciplined during her employment until she received a final warning on October 19, 2017. Two months later, during much of which she was on leave, Ms. Rose was fired.

2

Ms. Rose took a leave in September 2017 when Ms. Rose's father was diagnosed with pancreatic and thyroid cancer. She requested and received intermittent leave under the FMLA so that she could care for her father and take him to medical appointments and chemotherapy. The situation changed suddenly on October 20, 2017, when Ms. Rose learned that her father was rushed to the Intensive Care Unit at the VA Hospital. Soon after she contacted her supervisor, Cindy Clark, and Dr. Knauer's office and requested medical leave to be with her father. His condition grew worse and he was moved to hospice where he passed away in November 2017.

Ms. Rose was on leave from October 22, 2017 until November 17, 2017. Throughout her leave, Ms. Rose continued to work as much as possible since Dr. Knauer's practice had no one to fulfill her duties. Ms. Rose had a friend, Mark Paulk, go to Dr. Knauer's office and pick up assignments for her. Once she completed them, Mr. Paulk would take those documents back to the office and pick up new assignments. Dr. Knauer, Ms. Rose's supervisor, Cindy Clark, and her Director, Brian Boardman, had full knowledge of Ms. Rose's working while on leave and approved of it. She communicated with Dr. Knauer, Cindy Clark and Brian Boardman about work related issues and instructed staff about what work she needed them to provide. As an example, on October 26, 2017, Ms. Rose copied Ms. Clark on an email to Dawn Ferguson. Ms. Rose stated throughout that email that she was continuing to work, including late evenings and weekends, while at the VA with her father. On October 28th, Ms. Rose emailed Ms. Clark about staffing and billing issues. Then on October 30th, Ms. Clark emailed Ms. Rose about staffing issues and the impending soft "go live." Ms. Rose responded shortly after midnight on November 1st. Similarly, Ms. Rose copied Brian Boardman on emails regarding work related issues while she was on FMLA leave. At no point did Ms. Clark, Dr. Knauer, Brian Boardman or any other member of management inform Ms. Rose that she was not permitted to work while on leave.

Ms. Rose returned to work from November 17th through November 24th. On Monday, November 27th, Ms. Rose underwent previously scheduled reconstructive knee surgery.[2] She remained off work until December 11, 2017. Again, during this time she continued to work from home when possible. Upon her return, Ms. Rose worked through December 14th. The next day she went to see her surgeon because her knee was swollen and painful. Her doctor then took her off work from December 15, 2017 through January 15, 2018. In its termination notice, UH contends that on December 12th and 14th, Ms. Rose sent several "unprofessional" emails to Ms. Clark, staff and a co-worker in another department. Ms. Rose was unaware of what emails UH is referring to and asked for copies. Her request was denied. We ask that UH provide us with copies of these particular emails so that we can review them.

When she began her leave, Ms. Rose continued working from home. She corresponded with Ms. Clark on December 17th informing her of the office procedures, important matters to address and measures she had taken to ensure coverage of critical office operations, including billing. On December 19th, Ms. Rose communicated with Danielle Curry, who handled aspects of billing from outside the office. Later that day, at 1:50 p.m. Ms. Clark informed Ms. Rose by text that she was not to work while on leave and she was not permitted on hospital grounds unless she was there for medical treatment. Ms. Rose responded that she had physical therapy

---

[2] In mid-October 2017, Ms. Rose had informed Dr. Knauer, her supervisor, Cindy Clark, her HR Manager, Valarie Jaggie and other UH management that she would be off work for knee surgery beginning November 27, 2017.

3

twice a week at UH and had an appointment scheduled with Dr. Knauer, her immunologist. After that text exchange, Ms. Rose sent a text to Danielle Curry to inform her that she would not be delivering charge tickets as they had previously arranged because she was on leave. Ms. Rose also called and cancelled her appointment with Dr. Knauer scheduled for December 20, 2017.

On December 20, 2017, Ms. Clark and the HR Manager, Valarie Jaggie, called Ms. Rose on speaker phone from her office and terminated her employment. Ms. Rose's office is next to the office lobby and any conversations conducted on speaker phone are easily heard in the lobby and adjoining areas. UH policy states that such discussions will be conducted in a setting that assures privacy. Ms. Rose's termination phone conference was anything but private.

During the telephone conference, Ms. Clark and Ms. Jaggie stated that Ms. Rose was being terminated due to the "unprofessional" emails on December 12th and 14th, which they refused to provide. The other reason given for her termination was that Ms. Rose was working while on leave. UH allowed Ms. Rose to work throughout her leaves during the fall of 2017. Then, one day after informing her by text that she was not to work while on leave, UH fired her, without prior warnings or disciplinary action. UH describes and quotes from text messages and phone calls it contends Ms. Rose made to staff on December 19th and 20th. We would appreciate UH providing copies of those text messages along with the date and times they were sent and any additional information about the alleged work related phone calls Ms. Rose made on those two days.

UH's sudden about face once Ms. Rose informed management that she needed a thirty-day leave of absence points to her medical condition and related requests for leave as the real reasons for her termination. Even Dr. Knauer questioned UH's motivation. In an email he wrote to Ms. Rose on January 5, 2018, Dr. Knauer stated, "I highly regret the events of the last few weeks. It was terrible timing, and suspicious accusations. I am not sure if you are appealing, but an investigation into the exact reasons for dismissal seems justified." Unfortunately, Ms. Rose did not have an opportunity to appeal her termination. She received the Complaint Resolution Statement Form the day <u>after</u> the filing deadline.

In the termination notice, UH also accused Ms. Rose of violating the policy and procedure regarding passwords. However, Ms. Rose did not ask staff members to provide their passwords. Rather, she requested their login information in order for her to change their security levels and access levels for certain programs that were being updated.

Between the time of her final warning and her termination notice, Ms. Rose was at work for a total of two weeks. In both the final warning dated October 19, 2017 and the termination notice, UH refers to Ms. Rose's "aggressive behavior." UH goes a step further in the termination notice by claiming she engaged in "threatening behavior." Any implication that her behavior was in any way physically threatening is absolutely wrong. Both statements are gross exaggerations used to justify UH's decision to skip the intermediate disciplinary steps and proceed immediately to a final written warning and then termination. In her final warning, UH also mentions Ms. Rose's signing a contract which it claims she was not authorized to do. That contract was for transcription services Dr. Knauer wanted to utilize in his practice. The vendor, Premier Office Tech, Inc., was approved through UH's self-service invoicing program and Dr.

*Paul J. Corrado*
**Attorney & Counselor At Law, Co.**
*24700 Chagrin Boulevard, Suite 309*
*Beachwood, Ohio 44122*

Telephone: (216) 765-4000 x11
Fax: (216) 765-4100

Email: pcorrado@ohioemploymentlawyer.com
www.ohioemploymentlawyer.com

January 22, 2019

Janet Miller, Esq.
Chief Legal Officer
University Hospitals Law Department
3605 Warrensville Center Road
Shaker Heights, OH 44122

**Re: Michelle Rose/Termination of Employment**

Dear Ms. Miller:

I represent Michelle Rose, a former employee of University Hospitals and University Hospitals Physicians Services, Inc. ("UH"). On December 27, 2018, we sent, by email and U.S. Mail, a letter on Ms. Rose's behalf to John Gerak, Esq. at Olgetree, Deakins, Nash, Smoak & Stewart, P.C. Mr. Gerak's law firm had represented UH in other employment matters. He indicated that his firm had not been retained on this matter but he would forward the letter to UH's legal department.

To date, we have not heard from UH and are concerned that our letter was lost or misplaced. We have enclosed a copy of the letter with my signature and ask that UH respond within seven days of receipt.

Sincerely,

Paul J. Corrado

*Paul J. Corrado*
**<u>Attorney & Counselor At Law, Co.</u>**
*24700 Chagrin Boulevard, Suite 309*
*Beachwood, Ohio 44122*

Telephone: (216) 765-4000 x11                                   Email: pcorrado@ohioemploymentlawyer.com
Fax: (216) 765-4100                                                         www.ohioemploymentlawyer.com

February 14, 2019

**<u>Via Hand Delivery</u>**
Janet Miller, Esq.
Chief Legal Officer
University Hospitals Law Department
3605 Warrensville Center Road
Shaker Heights, OH 44122

[handwritten: 2nd letter to Jane Reese]

**Re: Michelle Rose/Termination of Employment**

Dear Ms. Miller:

    I represent Michelle Rose, a former employee of University Hospitals and University Hospitals Physicians Services, Inc. ("UH"). On December 27, 2018, we sent, by email and U.S. Mail, a letter on Ms. Rose's behalf to John Gerak, Esq. at Ogletree, Deakins, Nash, Smoak & Stewart, P.C. Mr. Gerak's law firm had represented UH in other employment matters. He indicated that his firm had not been retained on this matter but he would forward the letter to UH's legal department. Knowing John, I am sure that he did forward the letter as he said he would.

    When we did not hear from UH, we were concerned that our letter was lost or misplaced. On January 22, 2019, we mailed a cover letter and the original letter to you and requested a response. To date we have received no acknowledgement or response. To ensure that the letters are delivered to you, we are hand delivering the original letter and our first follow up letter, which accompany what is now our third letter about this matter. We would appreciate the courtesy of a response within seven days of receipt. If UH fails to respond for the third time, Ms. Rose will take appropriate action.

    I can be reached at the street and email addresses and phone number in the letterhead.

Sincerely,

*Paul J. Corrado*
Paul J. Corrado

***Paul J. Corrado***
***Attorney & Counselor At Law, Co.***
*24700 Chagrin Boulevard, Suite 309*
*Beachwood, Ohio 44122*

Telephone: (216) 765-4000 x11  
Fax: (216) 765-4100

Email: pcorrado@ohioemploymentlawyer.com  
www.ohioemploymentlawyer.com

July 24, 2019

**Via Hand Delivery**
Marcie A. Manson, Esq.
Jane Reese
University Hospitals Law Department
3605 Warrensville Center Road
Shaker Heights, OH 44122

    **Re: Michelle Rose/Termination of Employment**

Dear Attorney Manson and Ms. Reese:

  As you know, I represent Michelle Rose, a former employee of University Hospitals and University Hospitals Physicians Services, Inc. ("UH"). On December 27, 2018, we sent, by email and U.S. Mail, a letter on Ms. Rose's behalf to John Gerak, Esq. at Olgetree, Deakins, Nash, Smoak & Stewart, P.C. Mr. Gerak's law firm had represented UH in other employment matters. He indicated that his firm had not been retained on this matter but he would forward the letter to UH's legal department. We then sent two more letters to the Law Department before we received a telephone call from Ms. Reese on February 26, 2019.

  Since that time, we have called repeatedly about UH's anticipated response. Ms. Reese regularly have communicated a variety of reasons for UH's delay in responding to our December 27th letter. To date, we have not received anything even though Ms. Reese regularly stated that UH "hoped" to have something to us by the end of each week. In our original letter we asked for certain documents including emails from December 12th and 14th, 2017 that UH referred to as "unprofessional", and certain text messages that UH contends Ms. Rose sent to staff on December 19th and 20th. Additionally, we asked for any information about the telephone calls that Ms. Rose allegedly made to staff on those two days. We believed that the requested materials would help resolve this matter. However, those documents and information have not been provided, leading us to conclude that they do not exist.

1

At this time, Ms. Rose has asked that I make a demand of $130,000.00 to resolve her claims against UH. If we do not hear from UH within seven days of receipt of this hand-delivered letter, Ms. Rose intends to move forward and file a lawsuit.

Sincerely,

Paul J. Corrado