# The Lazzaro Law Firm LLC
Advocates for Employees. Your Employment, Overtime + Minimum Wage Rights.

David J. Steiner
The Heritage Building
34555 Chagrin Boulevard, Suite 250
Moreland Hills, Ohio 44022
Direct: 216-650-4030
Phone: 216-696-5000 x3
Fax: 216-696-7005
david@lazzarolawfirm.com

October 23, 2019

*Sent via E-mail and First Class Mail*

Jane Reese
Senior Litigation Analyst
University Hospitals - Claims and Litigation Services
3605 Warrensville Center Rd., LL 9115
Shaker Heights, OH 44122
Jane.Reese2@uhhospitals.org

**Re:     Michelle Rose/ University Hospitals (UH) and University Hospitals Medical Practices (UHMP)**

Ms. Reese:

This law firm represents former UH and UHMP (collectively referred to as "UH") employee Michelle Rose with respect to her wrongful termination claims against the organization. I understand that UH has previously communicated with Ms. Rose's prior counsel, Paul Corrado, regarding her claims.

I do not write to re-hash prior arguments. Instead, I write to convey the main strengths of Ms. Rose's arguments relating to the pretextual nature of her termination, which violated both the FMLA and disability discrimination laws. I also write to inform you that Ms. Rose is prepared to file suit in this matter in the very near future, and to convey a settlement demand.

**Facts demonstrating that the proffered reasons for Ms. Rose's termination were pretextual**

- On March 2, 2018, the Ohio Unemployment Compensation Review Commission determined, after conducting a hearing, that Ms. Rose was terminated without just cause.

- The attached e-mail chain from October 28 to November 1, 2017 includes e-mails between Ms. Rose and her supervisor, Cindy Clark. Dr. Knauer was also included on this chain. After receiving an e-mail from Ms. Rose on October 28, 2017, Ms. Clark responded with a work-related e-mail on October 30, 2017, which was directly in the middle of Ms. Rose's FMLA leave. Note that Ms. Clark happily engaged in work-related discussions in this e-mail, and nowhere did she

>     tell Ms. Rose not to send work-related e-mails during her leave. Instead, Ms. Clark stated in in the October 30 e-mail that:
>
>     > *Michelle,*
>     >
>     > *I only found out about the float situation on Friday. I reached out to several other offices with no success.*
>     >
>     > *Are you stating that you need to hire a fulltime MA? Did you enter the request in Taleo?*
>     >
>     > *When Dr. Hertz said we would have coverage he was talking about the October 9th soft go live and at that time we did have someone that could come to your office ( One of the other Managers) and that is when you said you had a plan and everything was okay. I can check with the Admin for Wave 1 and see if she has anyone that can help and let you know. I have been asking every other site if they have an MA to spare ( for patient care) and everyone is working lean right now and the response has been no.*
>     >
>     > *As far as billing: you need to attend the NON CBO classes to learn how to bill in Soarian. When did you reschedule those classes?*
>     >
>     > *Thank you,*
>     > *CC*
>
>     It is also Ms. Rose's understanding that Ms. Clark was **not** disciplined or terminated for engaging in work-related e-mails with a subordinate out on FMLA leave.

- On January 5, 2018, Dr. Knauer, for whom Ms. Rose worked, sent her an e-mail in which he admitted that her termination was unjustified and encouraged her to appeal the decision. The e-mail stated in part:

  > *I highly regret the events of the last few weeks. It was terrible timing, and suspicious accusations. I am not sure if you are appealing, but*
  > *an investigation into the exact reasons for dismissal seems justified.*

- UH suggests that Ms. Rose sent several "unprofessional" emails to Ms. Clark, staff, and a co-worker in another department on December 12th and 14th, 2017. Despite her and her counsel's prior requests, UH has still failed to provide these allegedly "unprofessional" e-mails, which we will assume at this point never existed in the first place.

It should also be noted that UH requested that Ms. Rose sign a release of liability in exchange for her health insurance to carry through to the end of February 2018, which she declined. As such, her medical insurance only continued through the end of December 2017. As a result of this, Ms. Rose was unable to attend her prescribed post-surgery physical therapy. She

October 23, 2019
Page 3 of 3

now requires additional knee surgery, potentially as a result of her missed physical therapy caused by her unlawful termination.

 Ms. Rose is prepared to file suit in federal court for disability discrimination and FMLA violations.  She will pursue all available remedies, including back pay, front pay, punitive damages, liquidated damages, emotional damages, and attorneys' fees.  She has yet to find mitigating comparable employment (despite her best efforts), and her lost wages continue to grow.  She is, however, amenable to discussing settlement at this time before proceeding to litigation.  Although her lost wages and benefits alone dwarf this figure, Ms. Rose is willing to resolve this matter at this time for $60,000.00.

 I look forward to your response by November 1, 2019, at which point Ms. Rose will proceed with litigation.

Very truly yours,

David J. Steiner